IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **BRET MUELLER,** | : | |
| | : | Civil Action No. _____ |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | **COMPLAINT** |
| | : | |
| **BOROUGH OF OAKLYN,** | : | |
| **OAKLYN POLICE DEPARTMENT,** | : | **JURY TRIAL DEMANDED** |
| **CHIEF MARQUIS MOORE,** | : | |
| and | : | |
| **LT. CRAIG STAUTS** | : | |
| **500 White Horse Pike** | : | |
| **Oaklyn, NJ  08107** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**I.      PRELIMINARY STATEMENT**

1.     Bret Mueller (hereinafter "Plaintiff") brings this action under 42 U.S.C. §1983 and the New Jersey Conscientious Employee Protection Act ("CEPA")  (N.J.S.A 34:19-1, *et seq*.), for retaliatory actions, taken under color of state law, in violation of Plaintiff's rights guaranteed under the CEPA and the First, Fifth, and Fourteenth Amendments of the Constitution pursuant to 42 U.S.C. §1983.  Plaintiff seeks equitable relief, compensatory damages, costs and attorney fees from Defendants.

## II. THE PARTIES

2. Plaintiff is an adult individual and citizen of New Jersey who resides at 127 Congress Avenue, Oaklyn, New Jersey 08107.

3. Upon information and belief, Defendant Borough of Oaklyn is a New Jersey municipality organized under the laws of New Jersey that directs, manages and controls Defendant Oaklyn Police Department, and employed, at all relevant times, Defendants Marquis Moore and Craig Stauts and Plaintiff Bret Mueller.  Oaklyn Police Department is a municipal policing authority for the Borough of Oaklyn, organized and authorized to act as a law enforcement agency under the laws of New Jersey.

4. Upon information and belief, Defendant Chief Marquis Moore, is an adult individual and citizen of New Jersey who was, at all relevant times, employed at the rank of Chief in the Oaklyn Police Department.

5. At all times material hereto, Defendant Moore acted on behalf of the Borough of Oaklyn and the Oaklyn Police Department in the scope and course of his employment as the Chief of the Oaklyn Police Department and an employee of the Borough of Oaklyn, and/or in his own right, under color of state law, with personal animus against Plaintiff.

6. Upon information and belief, Defendant Lt. Craig Stauts, is an adult individual and citizen of New Jersey who was, at all relevant times, employed at the rank of Lieutenant in the Oaklyn Police Department.

7. At all times material hereto, Defendant Stauts acted on behalf of the Borough of Oaklyn and the Oaklyn Police Department in the scope and course of his employment as a Lieutenant of the Oaklyn Police Department and an employee of the Borough of Oaklyn, and/or in his own right, under color of state law, with personal animus against Plaintiff.

8. At all times material hereto, Defendants Borough of Oaklyn and the Oaklyn Police Department acted individually, and/or in concert through their agents, representatives, servants and/or employees, ostensible or otherwise, who were engaged in the Borough of Oaklyn's and the Oaklyn Police Department's business and acting within the scope of their agency, servitude and/or employment on behalf of Borough of Oaklyn and the Oaklyn Police Department.

9. At all times material hereto, the conduct of Defendants as enumerated within this Complaint occurred within the County of Camden and within the District of New Jersey.

### III. JURISDICTION AND VENUE

10. Jurisdiction over this action is conferred on this Court by 28 U.S.C. § 1331 and 28 U.S.C. §1343.

11. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. §1391.

12. At all times material hereto, Defendants Borough of Oaklyn and the Oaklyn Police Department were individually and in concert, jointly, an "employer" as defined by N.J.S.A. 34:19-2(a).

13. At all times material hereto, Defendant Moore aided and abetted the retaliation that Plaintiff was subjected to during the course and scope of his employment, and, in addition, harassed and retaliated against Plaintiff in his own right and with personal animus while acting under color of state law within the District of New Jersey.

14. At all times material hereto, Plaintiff was employed by Borough of Oaklyn and the Oaklyn Police Department and assigned to work within the District of New Jersey.

## IV. FACTUAL BACKGROUND

15. Plaintiff Officer Bret Mueller comes from a family of law enforcement public servants and from an early age aspired to live a life in public service in Oaklyn. Officer Mueller's great uncle, Arthur Miller, was the first police chief of Oaklyn, a position latter held by his cousin Jack Laggy. Officer Mueller's father, Bart Mueller, formerly served on Oaklyn Borough Council and was formerly Mayor of the Borough.

16. After graduating in 1996 from Camden Catholic High School in Cherry Hill, Officer Mueller enlisted in the United States Marine Corps, reached the rank of Corporal, served honorably, and received an honorable discharge in 2002.

17. Officer Mueller then attended the Gloucester County Police Academy, and he was hired by the transit division of the Delaware River Port Authority, through which he policed areas overseen by the Port Authority Transit Corporation ("PATCO").

18. In June 2004, Officer Mueller was hired by Oaklyn Police Department (the "Oaklyn PD" or the "Department") where he continues to serve as a patrolman, 15 years later.

19. During his tenure at Oaklyn PD, Officer Mueller has been a patrol officer. For approximately six years he has assisted the Camden County Prosecutor's Office with accident reconstruction for serious bodily injury and fatal crashes.

20. Officer Mueller has been rewarded with positions as a field training officer and a firearms instructor, also known as a range instructor.

21. Officer Mueller has led efforts for the Department to establish and to improve community relations between police and citizenry including dedicating time to and volunteering with Oaklyn Little League and Be The Match, which is the national marrow donor match program. Furthermore, Officer Mueller donated bone marrow.

22. In 2014, Officer Mueller initiated the first ever Oaklyn PD Community Day. engaging students of Oaklyn public schools with educational demonstrations of various police activities including the state police helicopter, canine unit and bomb unit. Officer Mueller also established an annual gathering – National Night Out. The Oaklyn PD and Officer Mueller, specifically, received praise from the community for his National Night Out event and other community outreach.

23. Officer Mueller also introduced Oaklyn to a positive "ticketing" system, which involved the participation of neighborhoods businesses to reward children demonstrating exemplary behavior. For example, an officer could reward children wearing bicycle helmets by giving them a "ticket" for free pizza or ice cream that could be redeemed at a local shop.

24. Officer Mueller's position as a field training officer, his position as firearms instructor, and his community outreach programs were very important to him and his mission as a public servant, his esteem, self-worth, his reputation among his fellow officers, and his standing in the community.

25. There are 14 police officers in the Oaklyn PD: one chief, one lieutenant, two detectives, two sergeants and eight patrol officers, serving approximately 4,000 residents.

**Protected Whistleblowing Activities**

      **2016 Complaint Against Chief Moore**

26. In or about June 2016, on one or more occasions, Defendant Chief Moore ordered on-duty subordinates to leave the Oaklyn PD's jurisdiction in Oaklyn PD vehicles as a car service to pick up Chief Moore and one or more civilians at a bar on evenings when Moore was intoxicated and unable to drive himself home.

27. In June 2016, Officer Mueller and his father, Bart Mueller, filed a complaint against Chief Moore for, among other things, drinking in bars in the company of individuals that Moore knew to be under-aged, and using police resources as a personal after-hours chauffer from these gatherings. The complaint also raised other grievances including that Chief Moore violated policy by accepting free services from AllRisk, Inc., a commercial cleaning company that does business with the Borough of Oaklyn and Oaklyn PD.

28. The complaint was submitted by Bart Mueller to protect Plaintiff from possible retaliation. As a result of this complaint, Chief Moore was suspended for nine days.

**2018 Report of Double-dipping to Attorney General and County Prosecutor**

29. In March, 2018, Officer Mueller became concerned when he noticed an irregularity in the online scheduling system. He brought the irregularity to the attention of his direct supervisor, Sergeant Charles Antrilli. Officer Mueller and Sergeant Antrilli concurred that the online record showed a payroll irregularity.

30. The records showed that some officers, on days that they had also been hired and paid to work for outside contractors, had double-dipped and been paid by the Department too.

31. Off-duty police officers are permitted to moon-light, provided such private services are approved and scheduled by the Oaklyn PD in advance.

32. Under this off-duty work detail program, police officers are regularly paid by private companies to direct traffic at construction sites. Those shifts are highly desirable because they pay well and are generally safe.

33. Officers paid for such work by an outside contractor are not entitled to also be paid by the Department. Those days are marked on the schedule as time off (personal day,

compensatory time, vacation day) or left blank indicating that Oaklyn PD will either deduct that time from accrued time off or not pay the officer for a regular full day of work.

34. Officer Mueller was alarmed to see that the online schedule and payroll system was sometimes marked with an "A" or "B" – signifying that Moore and Stauts were also paid by the Department as on-duty for a full shift – on days when they had been working offsite for private contractors, meaning that they had been paid by the Department while they were also working for and being paid by a contractor.

35. Upon closer inspection, it became clear that the double-dipping irregularity (hereinafter the "Double-Dipping Scheme") had primarily benefited the two most senior officers in the Department – Chief Moore and Lieutenant Craig Stauts.

36. Officer Dru Genther also benefit from the Double-Dipping Scheme.

37. The Double-Dipping Scheme occurred regularly during no less than a sixteen-month period from January 2017 until disclosed by Plaintiff's reporting it.

38. Officer Mueller elected to report the payroll irregularity outside of the Department and Borough because the beneficiaries of the apparent Double-Dipping Scheme were the most senior supervisors and because both the Chief of Police and Mayor of Oaklyn, Robert Forbes, had previously showed hostility towards whistleblowers, specifically Officer Mueller when he had his father file a complaint against Chief Moore in 2016.

39. In April 2018, Plaintiff had documentation of the Double-Dipping Scheme delivered to the Attorney General and the Camden County Prosecutor's Office in Camden.

40. Upon information and belief, the Department responded to a subpoena from an investigation into the Double-Dipping Scheme and provided the investigators with payroll records that had been altered after the scheme was reported.

**Defendants Retaliate Against Plaintiff for Protected Whistleblowing Activities**

41. After the June 2016 complaint against Chief Moore, Plaintiff began to experience adverse employment actions that were retaliatory, immediately after Chief Moore learned of the complaint.

42. Chief Moore told Officer Mueller that he would be punished for the complaint brought against him, stating, "I know it was you, nothing is going to happen to me, but I will never do anything to help you ever again."

43. Upon information and belief, Chief Moore either believed Officer Mueller had filed the 2016 complaint against him or, if he had learned that Plaintiff's father had actually submitted the complaint, correctly assumed Plaintiff's involvement.

**Defendants Denies Plaintiff Desirable Promotions, Duties and Community Activities**

44. Officer Mueller was informed by Moore that Oaklyn PD would no longer be doing the National Night Out Events and Officer Mueller would no longer be able to get compensatory time for volunteering for the event, nor would he continue to receive the positive recognition for the event as he had in the past.

45. Upon information and belief, Chief Moore, provided his "lack of available overtime" excuse as a pretext to cancel the event when the true motivation for canceling the event was to retaliate against Officer Mueller for the complaint filed against Chief Moore.

46. After the Double-Dipping Scheme was reported to the Attorney General and the County Prosecutor's Office, the retaliation against Plaintiff escalated.

47. Although Plaintiff had assisted the Camden County Prosecutor's Office with accident reconstruction for serious bodily injury and fatal crashes, Plaintiff has not been assigned to assist with recent crashes, which has reduced Plaintiff's overtime compensation.

48. Chief Moore knew that Plaintiff's roles as range instructor and field training officer were important to him.

49. In March 2019, Chief Moore demoted Plaintiff from his role as a Training Officer. Moore informed Officer Mueller that he would no longer be permitted to be a field training officer and that his current two trainees would be reassigned to other officers for the remainder of their training.

50. Upon information and belief Defendants' motivation for the demotion was to retaliate against Officer Mueller for the blowing the whistle on the Double-Dipping Scheme.

51. Chief Moore and Lt. Stauts also denied Plaintiff opportunities to be assigned off-duty work detail, to which Plaintiff was entitled.

52. Furthermore, Chief Moore and Lt. Stauts have has assigned lucrative overtime assignments to less senior officers, denying Officer Mueller overtime opportunities he was owed in violation of Department policy and the seniority provisions of the collective bargaining agreement between the Borough of Oaklyn and P.B.A. Local No. 257.

53. Instead of offering Plaintiff a promotion to Detective, Defendants promoted a first-year officer to Detective over Plaintiff who is a 15-year veteran.

54. Before engaging in protected whitleblowing activity, Plaintiff was offered and accepted an appointment to replace the outgoing Office of Emergency Management for the Borough of Oaklyn, which entitles Plaintiff to receive a second pension in addition to his pension with the Department.

55. After engaging in protective whistleblowing activity, Mayor Forbes declined to appoint Plaintiff and instead appointed Officer Dru Genther who was one of the three participants in the Double-Dipping Scheme.

56. In 2018, Chief Moore for the first time, brought a second officer on as range instructor, who was less senior and had less relevant experience. Responsibilities for firearms training was gradually shifted away from Officer Mueller to the new instructor.

**Defendants Concoct Investigations and Administrative Discipline to Harm Plaintiff**

57. In 2018, Chief Moore told other Oaklyn PD officers that he wanted to have Officer Mueller punished, and implied that he would need to be furtive because he could not go after Plaintiff too overtly because "Bret was too smart."

58. Chief Moore also stated that he could not find anything Officer Mueller was doing wrong. Chief Moore declared that he would have to make Officer Mueller's direct supervisor, Sergeant Antrilli, miserable to get to Officer Mueller to make him miserable too.

59. Officer Mueller identified that the other range instructor had lapses in record keeping.

60. In 2018, in a telephone call to Officer Mueller, Chief Moore screamed about his frustration that Plaintiff had identified lapses in record keeping and accused Officer Mueller of "doing this to make him bad."

61. Defendant Chief Moore ordered an Internal Affairs ("IA") investigation of Plaintiff regarding the other range instructor's lapses in record keeping.

62. Chief Moore disciplined and administratively censured Plaintiff, even to the extent that Chief Moore faulted Plaintiff for inadequate supervision of the other range instructor over whom Plaintiff had neither authority nor responsibility.

63. Upon information and belief Chief Moore's reasons for shifting duties to a new officer and administratively disciplining Officer Mueller for reasons purportedly related to the other officer's paperwork were a mere pretext, and those actions were actually motivated by

Chief Moore's calculation that it would deprive Officer Mueller of desirable compensible time on the range , place a negative mark on Officer Mueller's excellent record, and diminish Plaintiff's reputation as a police officer as well as diminish Plaintiff's own sense of worth and well-being, all in retaliation for protected whistleblowing activity.

64. This IA investigation was part of a pattern of several investigations concocted by Defendants to punish Plaintiff's protected whistleblowing activity by manufacturing a paper trail of discipline to tarnish Plaintiff's 15-year career, which was otherwise unblemished by investigation or discipline.

65. In August 2018, Defendant Chief Moore ordered an IA investigation of Plaintiff regarding a response to an assault incident. Again, the IA investigation was concocted because the response to the assault at issue was handled by two detectives, not Plaintiff.

66. In 2019, Defendant Chief Moore again ordered an IA investigation of Plaintiff regarding a suspect that was released on recognizance. Again, the IA investigation was concocted because the decision to release the suspect was made by a court official, not Plaintiff.

67. Upon information and belief, Defendants are currently scrutinizing Plaintiff seeking any opportunity to paper Plaintiff's personnel file and disciplinary record as retaliation for whistleblowing activities.

68. Upon information and belief, in February 2019, Mayor Forbes, targeting Plaintiff, requested an investigation into who "leaked" to members of Borough Council the Oaklyn Borough payroll records related to the Double-Dipping Scheme, and has involved detectives from the Camden County Prosecutor's Office.

**Defendants Malign Plaintiff's Reputation in the Department and Community**

69. Beyond formal administrative procedures, Defendants Chief Moore and Lt. Stauts have also sought and continue to seek opportunities to tarnish Plaintiff's reputation within the Department and in the community at large.

70. Defendants Chief Moore and Lt. Stauts falsely attributed Plaintiff with "a bad attitude" and a lack of respect for his fellow officers, for the Department, and for the leadership of Oaklyn generally to the extent that Mayor Forbes, in turn, stated that he does not care for Officer Mueller and "he would place parking meters along West Clinton Avenue in Oaklyn and have him dressed in a skirt, in uniform and collect meter fares for the rest of [his] career."

71. In 2018, Chief Moore falsely told Mayor Forbes and members of Borough Council that Officer Mueller is "the reason new officers are leaving for new departments" and is the reason for why the Department is in turmoil.

72. Defendant Moore's reason for falsely attributing his Department's mismanagement and turmoil to Plaintiff was to diminish Plaintiff's credibility, reputation as a police officer, standing within the community as well as diminish Plaintiff's own sense of worth and well-being, and to cause Plaintiff to doubt his professional worth, his future as a police officer, and his physical safety in those situations when Plaintiff's duties require that he depend on the willingness of fellow officers to risk their own safety to preserve his.

73. Chief Moore then reiterated his false allegations about Plaintiff by telling Borough Council members that Officer Mueller was the reason that Oaklyn Police Department has been suffering the high amount of turn over. Chief Moore also stated that Officer Mueller was telling new officers to leave the Oaklyn Police Department to better themselves elsewhere.

74. Council members were also informed by Defendant's Moore that Officer Mueller was to blame for the investigation by the Camden County Prosecutor's Office for the Double-Dipping Scheme.

75. Chief Moore and Lt. Stauts repeatedly stated that officers had to be careful around Officer Mueller because he would try to "jam up" other officers, that Officer Mueller was "not to be trusted" and that he was "bad for the Department."

76. In October 2018, Officer Mueller and several other officers met socially for dinner. The following day, officers were approached by Chief Moore and Lt. Stauts and asked why they would hang out with Officer Mueller and associate themselves with him. Moore and Stauts made clear to each officer that they had to "choose sides" between Officer Mueller on the bad side or Chief Moore and Lt. Stauts on the good side.

77. Similarly, in November 2018, when an officer had dinner at Officer Mueller's home, Chief Moore questioned that officer's loyalty to the Department and made clear to that officer that he could not fraternize with Officer Mueller and still remain in Chief Moore's good graces.

78. In February 2019, Chief Moore and/or Lt. Stauts made sure that officers at the Haddonfield Police Department knew that the Double-Dipping Scheme whistleblower was a "disgruntled" Oaklyn police officer who had a wife who worked for the Haddonfield Police Department as a detective.

79. Chief Moore, Lt. Stauts and most in the Haddonfield Police Department know that Plaintiff is the only Oaklyn police officer whose wife works as a Detective Sargent in Haddonfield Police Department.

80. Chief Moore and Lt. Stauts intentionally disparaged Officer Mueller to Haddonfield officers in a manner that was calculated to cause Officer Mueller to fear that his wife's standing with the Haddonfield Police Department would be damaged, as well as diminishing Plaintiff's own reputation and standing within the community of police and police departments in the region.

81. At least as recently as February 2019, Chief Moore and Lt. Stauts have been warning incoming new officers to "be careful" and "look out for that guy," referring to Officer Mueller.

82. Chief Moore had Officer Mueller assigned to posts invented for the purpose of being punitive and demeaning, such as patrolling the Department's parking lot. In April 2019, while Municipal Court was in session, Chief Moore ordered Officer Bret Mueller's supervisor to "have Bret pay attention to our parking lot for smokers and parking violations."

83. In April 2019, Chief Moore made changes to the payroll system to conceal schedule and payroll records from Plaintiff, including records of who had been paid for overtime or assigned work paid privately through contracting jobs. The changes made to the payroll system also revoke Plaintiff's ability to enter overtime into the system.

84. As retaliation for protected whistleblowing Officer Mueller has been denied overtime, roles as a firearms officer and field training officer, appointment to OEM, and promotion to Detective, among other retaliatory punishments. He has also been denied all advancement. As a result, he has lost wages and compensation, pension and other benefits, future earning power, as well as loss of seniority.

85. Defendants Moore's and Stauts's false and demeaning comments about Plaintiff to Plaintiff's police officer colleagues in the Oaklyn and Haddonfield Police Departments have

led to and caused Plaintiff and his wife, friends and coworkers to doubt Plaintiff's professional worth and future as a policeman, the only career Plaintiff has ever contemplated or desired.

86. Defendants Moore's and Stauts's false and demeaning comments and retaliatory actions taken and directed by them cause and were intended to cause serious damage to Plaintiff's reputation and standing as a police officer within the ranks of the police community and within the civilian communities in which Plaintiff and his wife work, and in which his family has lived and served in public service for generations.

87. Plaintiff has suffered continuing and escalating stress and emotional distress in addition to loss of wages and compensation, reputation, and public status because of Defendants Moore's and Stauts's retaliatory conduct and the false and demeaning retaliatory comments made by Moore and Stauts and/or caused by Moore and Stauts to be made by or repeated by others.

### COUNT I – 42 U.S.C. §1983
### BRET MUELLER V. ALL DEFENDANTS

88. Plaintiff hereby incorporates as if restated at length all prior allegations.

89. Plaintiff exercised his Constitutional rights by investigating, reporting and opposing Defendants' unlawful conduct and complaining to authorities about the Double-Dipping Scheme of Defendants Chief Moore and Lt. Stauts.

90. Plaintiff's activities in investigating and reporting to authorities about Defendants' unlawful conduct were protected activity under the state and federal Constitution and federal laws and regulations, including the First Amendment, Fifth Amendment, and the Fourteenth Amendment.

91. The acts of Chief Moore and Lt. Stauts of personal animus and harassment in retaliation against Plaintiff because of his protected activities, taken by Defendant under color of state law, are in violation of 42 U.S.C. §1983.

92. As direct and proximate result of Defendant's actions taken under color of state law in violation of 42 U.S.C. §1983, Plaintiff has suffered and sustained damages including loss of wages and compensation, benefits, future earning power, back pay, front pay and interest due thereon, as well as loss of seniority and damage to his physical and emotional state from mental anguish, emotional distress, humiliation and damage to his reputation.

**WHEREFORE;** Plaintiff respectfully requests that this Court enter judgment against Defendants Chief Moore and Lt. Stauts on COUNT I for:

**A.** All proper damages including back pay, front pay, loss of other income or compensation, loss of benefits and interest thereon, and also compensatory damages, punitive damages and attorneys' fees and costs.

**B.** All other legal, equitable and compensable relief as this Court may deem necessary and just to make Plaintiff whole.

### COUNT II
### VIOLATION OF NEW JERSEY'S CONSCIENTIOUS EMPLOYEE PROTECTION ACT (N.J.S.A 34:19-1, ET SEQ.)
### BRET MUELLER V. ALL DEFENDANTS

93. Plaintiff hereby incorporates by reference all of the aforementioned paragraphs as if fully set forth at length herein.

94. At all times relevant to the factual circumstances set forth above, the Defendants were an "Employer" as that term is defined in N.J.S.A. 34:19-2(a).

95. At all times relevant to the factual circumstance set forth above, Plaintiff was an "Employee" as that term is defined in N.J.S.A. 34:19-2(b).

96. At all times relevant to the factual circumstances set forth herein, Defendants Chief Moore and Lt. Stauts were Plaintiff's "Supervisor" as that term is defined in N.J.S.A. 34:19-2(d).

97. Over the course of his employment with Defendants, Plaintiff disclosed to public federal and state law enforcement, that he honestly believed that Defendants were engaged in activities, and practices that were in violation of a contract, law, rule, and regulation promulgated pursuant to law, and that such improper activities, policies, and practices were unlawful.

98. Rather than address the unlawful activities reported by Plaintiff, Defendants instead refused to promote him, made threatening and demeaning comments to Plaintiff and to coworkers, and threatened to or did reassign job responsibilities in a manner that was intended to and did cause Plaintiff to doubt his professional worth and future and his physical safety at work. These actions were done because of Plaintiff's complaints and constitute "retaliatory action" by the Defendants as that term is defined in N.J.S.A. 34:19-2(e).

99. As a direct and proximate result of Defendants' violation of CEPA, Plaintiff has suffered damages including, but not limited to humiliation, emotional distress, mental pain and anguish, and continues to suffer substantial losses in earnings, job experience, retirement benefits, and other employee benefits that he would have received absent Defendants' unlawful conduct. Furthermore, Plaintiff has incurred additional costs and expenses which would not have been incurred but for Defendants' unlawful conduct.

**WHEREFORE**; Plaintiff respectfully requests that this Court enter judgment against Defendants Borough of Oaklyn, Oaklyn Police Department, Chief Moore and Lt. Stauts on COUNT II for:

A. All proper damages including back pay, front pay, loss of other income or compensation, loss of benefits and interest thereon, and also compensatory damages, punitive damages and attorneys' fees and costs.

B. All other legal, equitable and compensable relief as this Court may deem necessary and just to make Plaintiff whole.

## JURY DEMAND

Plaintiff demands a jury to hear and decide all issues of fact in accordance with Federal Rule of Civil Procedure 38(b).

Dated: __8/14/2019_____                                   Respectfully submitted,

*s/ Brian E. Kasper, Esq.* _____
Brian E. Kasper, Esquire
Stark & Stark Attorneys at Law
993 Lenox Drive
Lawrenceville, NJ 08648
T: 609.945.7624
BKasper@stark-stark.com

*Pending Admission Pro Hac Vice*
Robert C. Drake, Esquire
Benjamin Speciale, Esquire
Drake Speciale LLC
221 Chestnut Street – 2nd Floor
Philadelphia, PA 19106
Robert@drakespeciale.com
Ben@drakespeciale.com
215-732-2650